## THE STATE ex rel. DEMOCRAT PRINTING COMPANY v. WILDER, State Auditor.

### In Banc, November 22, 1906.

1. **PUBLIC PRINTING: Insurance Department: Not Controlled by Printing Act.** The Insurance Department is a separate and distinct department of the State government, and the disbursements of the funds belonging to that department appropriated to be used in paying its expenses, including its expenses for printing, are under the exclusive control of the Superintendent of Insurance, and accounts for printing for that department are not required to be approved by the Commissioners of Printing. Section 9028, R. S. 1899, which says that "all printing for the executive departments shall be ordered through the Commissioners of Printing," and section 9031, which says that "all accounts" for printing done under the provisions of the printing act "shall be carefully examined by the Commissioners of Printing, and when the account is corrected and adjusted and approved by said commissioners, the State Auditor shall draw a warrant upon the Treasury for the amount thereof, payable out of any moneys appropriated for that purpose," do not apply to the printing for the Insurance Department. But chapter 119, R. S. 1899, creating the Insurance Department, conferred upon the superintendent the right to contract for printing connected with his office, and to pay for the same out of the department funds.

2. ———: ———: ———: **General Appropriations Act of 1905.** Nor does the fact that section 31 of the General Appropriations Act of 1905, appropriating money for printing for the Insurance Department, and section 58 of the same act, providing that "all printing provided for in this act shall be done by the authority and under the direction of the State Printing Commission," mean that the printing for the Insurance Department shall be done under the direction of the Printing Commission under the contracts entered into by the commissioners on behalf of the State for the public printing, for said section 31 also provides that "the receipts of the Insurance Department shall be paid out only on the warrant of the State Auditor, which shall be drawn only on the requisition of the Superintendent of Insurance, duly made out and approved by him," thus bringing that act, as to the Insurance Department, into harmony with chapter 119, by section 7841 of which it is provided that the necessary expenses of the department are to be paid "on warrants drawn upon the Insurance Department fund by the State Auditor on vouchers approved by the superintendent."

Mandamus.

Peremptory writ awarded.

*W. S. Pope* for relator.

*Herbert S. Hadley,* Attorney-General, and *N. T. Gentry,* Assistant Attorney-General, for respondent; *Perry S. Rader* of counsel.

FOX, J.—This is an original proceeding begun in this court by which it is sought to compel the State Auditor, the respondent herein, to issue his warrant to the relator in payment of a certain claim for printing. It is unnecessary to reproduce in full the petition upon which this proceeding is predicated; it is sufficient to briefly refer to it.

On June 26, 1906, the relator, the Democrat Printing Company, filed its petition in this court asking for a writ of mandamus to issue to the respondent, the State Auditor, directing him to issue his warrant to the relator in payment of an account for $20.75 for printing done for the Insurance Department of the State of Missouri, which account had been approved by the superintendent of that department, and for stationery, including both the paper and the printing, said printing having been done during the months of February and March, 1906. The printing for which it is sought to compel the State Auditor to draw his warrant in payment of is set forth in "Exhibit A." as follows:

Exhibit A.

Insurance Department, State of Missouri.
To the Democrat Printing Company, for printing,
1906. Dr.

Feb. 10 To printing 400 circular letters ...... $5 00
Feb. 20 To printing 100 additional lines on
  blanks ...... ...... ................... 1 50

| | |
|---|---:|
| March 1 To 150 postal cards and printing notices thereon .................................. | 3 00 |
| March 1 To 250 postal cards and printing notices thereon .................................. | 4 00 |
| March 1 To 100 postal cards and printing notices thereon ................................. | 2 50 |
| March 9 To printing 150 additional lines on blanks ...................................... | 1 75 |
| March 15 To printing 350 circular letters...... | 3 00 |

$20 75

Approved this 22nd day of June, 1906, for $20.75.

. W. D. VANDIVER,

Superintendent.

And on the back of said exhibit appears the following:

"Hon. W. W. Wilder, State Auditor,

"I have approved the bill on the reverse side hereof and respectfully request you to draw a warrant for $20.75 on the State Treasurer in favor of Democrat Printing Company to pay the same. I hereby certify that the bill is for printing done and materials furnished necessary for the transaction of the business of the Insurance Department of this State.

"W. D. VANDIVER, Superintendent."

An alternative writ was ordered by the court to issue, and was made returnable at the October term, 1906. It is not essential to reproduce the alternative writ issued in this proceeding, nor the return of the respondent; it is sufficient to state that relator rests its right to the aid of this court upon the provisions of chapter 119, Revised Statutes 1899, and respondent in his return justifies his action in refusing to draw his warrant for the payment of the account for printing

upon the provisions of chapter 145, Revised Statutes 1899. The contentions of the respective parties, as well as the statutes upon which such contentions are predicated, will be fully presented in the course of the opinion. Relator interposed a demurrer to the return of the respondent and prayed for judgment upon the pleadings. The record in this proceeding consists of the pleadings, and they are now before us for consideration.

## OPINION.

The record in this proceeding sharply presents two conflicting contentions. First, it is insisted by the relator that the printing pertaining to the Insurance Department is governed and controlled by chapter 119, article 1, Revised Statutes 1899; on the other hand, it is insisted by the respondent that the printing of such department can only be done under the authority and direction of the Commissioners of Public Printing, and is therefore governed by chapter 145, Revised Statutes 1899. The correct solution of the propositions arising upon these two opposing contentions must be sought by a fair and reasonable construction of the various provisions of the statute applicable to the subject in hand.

The Insurance Department was created by the act of March 4, 1869. Sections 1 and 2 of that act created the department and provided that the chief officer of such department should be designated as the Superintendent of the Insurance Department. Following those sections provisions were made by section 7, that the superintendent should have his office in the city of St. Louis, and it was also provided that he should procure rooms necessary for his office at a rent not to exceed a specified sum per annum, and that he might provide a suitable safe, furniture, stationery, fuel, printing and such other things as may be necessary for the transaction of the business of his office. Section 8 of said act

also provided that all of the expenses of the department should be paid out of the fees and allowances provided for in the act, and that the State should not become in any manner liable for any expenses growing out of this department or any charges connected therewith. Section 16 of that act provided for the collection of fees and assessments by the superintendent and for the payment of such fees and assessments into the State Treasury, except he was authorized to retain the monthly expenses by filing vouchers for the same. Section 7 of the act of 1869 was amended in the revisions of '79 and '89; however, such changes do not in any way affect the proposition involved; therefore, it is unnecessary to set out in detail the changes so made. In 1897 section 5799, Revised Statutes 1889, was repealed and a new section enacted in lieu thereof, which is now section 7840, Revised Statutes 1899. This section provides:

"The said superintendent shall have his office in the City of Jefferson, and shall keep the same open for business from 8 a. m. to 5 p. m. every day except Sundays and public holidays. He shall have his office in the capitol building and be provided with suitable rooms therein and be furnished with a suitable safe, furniture, stationery, printing and such other things as may be necessary for the transaction of the business of his office. He shall also have one clerk at a salary of one thousand five hundred dollars per annum, and if it becomes necessary for the proper dispatch of the business of the department, said superintendent may employ additional clerical help at an expense not exceeding one thousand dollars per annum, and also to employ such actuarial work to be done as may be necessary, all of which expense shall be paid as provided for by section 7841 out of the amount appropriated by law from the fees collected by the insurance department. The Attorney-General shall be his legal adviser, but the superintendent may, with the approval of the

Governor, employ other counsel for the purpose of enforcing the insurance laws, except in criminal prosecutions. He may also employ suitable persons to make examinations as to the solvency of companies when he deems it necessary: Provided, however, that he shall not employ any person in any capacity who is an officer, agent or employee of any insurance company or association. Said office shall be deemed a public office, and the records, books and papers thereof, or on file therein, shall be deemed public records of the State. In the management of the assets of the dissolved companies, he shall employ only such clerical and other assistance as the courts having charge of the same may, in the first instance, direct.''

Section 7841, Revised Statutes 1899, referred to in the section last cited, provides: "All the expenses of the Insurance Department now or hereafter incurred and unpaid, or that may be hereafter incurred, including the salaries of the superintendent and deputy superintendent, except the expenses of examinations, valuations or proceedings, against any company, and for winding up, dissolving or settling the affairs of companies, which expenses are to be paid by the company, or as provided by this law, shall be paid monthly out of the amount appropriated by law from the fees collected by the Insurance Department, on warrants drawn upon such fund by the State Auditor on vouchers approved by the superintendent; and all the fees received by the superintendent under the provisions of this chapter shall, immediately on receipt thereof, be paid into the state treasury by the superintendent, and shall be placed to the credit of the Insurance Department fund. The State shall not be responsible in any manner for the payment of any such expense, or of any expenses of this department, or any charges connected therewith.''

In addition to the foregoing sections we have sec-

tions 7843 and 7844, Revised Statutes 1899, applicable
to this subject, which provide:

Sec. 7843. ''The Superintendent of the Insurance
Department shall cause to be prepared, and furnish to
every insurance company doing business in this State,
printed forms of the statements required by him from
said companies, and he may make such changes and
additions, from time to time, in the same, and in any
statements required, as shall seem to him best adapted
to elicit from said companies a true exhibit of their
condition and management.''

Sec. 7844. ''He shall also make, on or before the
second Monday in February in each year, or as soon
thereafter as may be practicable, to the Legislature, if
the same be in session, otherwise to the Governor, to
be forwarded by him to the Legislature within ten days
after the next meeting thereof, a report of the affairs
of the Insurance Department; which report shall con-
tain a tabular statement, and synopsis of the annual
statements, as accepted by the superintendent, of all
the insurance companies doing business in this State,
and such other matters as in his opinion may be for
the benefit of the public; and shall make such recom-
mendations as he shall deem proper in regard to the
insurance laws of this State. Copies of the annual
statements, with the deductions made by the superin-
tendent, of all the insurance companies doing business
in the State, shall be published in an appendix to the
annual report therein provided for. Not exceeding two
thousand copies of such report shall be published by
and subject to the order of the superintendent, at the
expense of the department.''

This brings us to section 31 of the general appro-
priation bill for the years 1905 and 1906, page 7, Laws
of 1905. This section provides: ''There is hereby ap-
propriated out of the State Treasury, chargeable to the
'Insurance Department Fund,' for the years 1905-1906,
for pay of the salary of the superintendent, six thou-.

sand dollars ($6,000); for pay of the salary of the deputy superintendent, four thousand dollars ($4,000); for actuarial services, clerk hire, including pay for one clerk at a salary not to exceed eighteen hundred dollars ($1,800) per annum, as a result of the approval of an act placing the fraternal insurance companies under the supervision of the Insurance Department, stationery, fuel, postage, printing and codifying the insurance laws of the State of Missouri, and for such other things as may be necessary for the transaction of the business of the said department (except the expenses of examination, valuation or proceedings against any company for winding up, dissolving or settling the affairs of any insurance company), the sum of thirty thousand dollars ($30,000); for costs of litigation and expenses of collecting delinquent taxes, fees and costs, one thousand dollars ($1,000); in all, forty-one thousand dollars ($41,000). The sums herein appropriated shall be paid out of the fees and earnings of the department of insurance and the receipts of the said office. The receipts of the Insurance Department shall be paid into the State Treasury monthly, not later than the fifth day of each month, and paid out only on the warrant of the State Auditor, which shall be drawn only on the requisition of the Superintendent of Insurance, duly made out and approved by him, stating specifically the purpose for which the money is to be applied."

These are substantially the provisions of the statute upon which relator predicates its right to the writ sought in this proceeding.

We will note the provisions of chapter 145, Revised Statutes 1899, upon which respondent bases the contention that the printing pertaining to the Insurance Department of this State is under the supervision of the Commissioners of Public Printing. Section 9011, Revised Statutes 1899, of this chapter, provides that "the Secretary of State, State Auditor and State

Treasurer shall *be ex officio* commissioners of the public printing during their terms of office, respectively.''

The printing contemplated by this chapter is thus classified by section 9012, Revised Statutes 1899, which provides: ''The printing for the State shall be divided into three classes, to be let in separate contracts, as follows: The printing of all bills in bill form for the two houses of the General Assembly, together with such resolutions and other matters as may be ordered by the two houses, or either of them, to be printed in bill form, the printing of all reports and all communications and other documents ordered by the General Assembly, or either branch thereof, other than such as shall be printed in pamphlet form, shall constitute the first class, and shall be let in one contract. The printing of the journals of the Senate and House of Representatives, and of such reports, communications and other documents as enter into and make a part of the journals of the appendixes thereto, all reports and communications and other documents ordered by the General Assembly, or either branch thereof, or by the executive departments, to be printed in pamphlet form, together with the volumes of public documents, the printing of the general and local laws and joint resolutions, shall constitute the second class, and shall be let in one contract. The printing of all blanks, circulars and other work necessary for the use of the executive departments, other than such as shall be printed in pamphlet form, shall constitute the third class, and be let in one contract: Provided, that the General Assembly or either house thereof may, by resolution, change the form of any printing that may be ordered by such house, and the class to which such form of printing shall belong shall determine the price to be paid therefor.''

Following those sections are numerous sections providing for the letting of the contract for such printing by the Commissioners of Public Printing and the

manner and character of performing the work; how-
ever, as they throw no light upon the proposition in-
volved in this proceeding it is unnecessary to repro-
duce them.

The duties of the commissioners in respect to the
printing contemplated by this chapter are embraced in
the following sections:

Sec. 9028. ''The Commissioners of Printing shall
examine the proof-sheets of all work executed under
the provisions of this chapter, and see that they are
correctly printed, and that all such work is executed in
a suitable manner and in accordance with the require-
ments of this chapter. Said commissioners shall keep
an accurate account of all papers delivered to the pub-
lic printer or printers and see that it is used properly
and without unnecessary waste. All work to be execut-
ed for the executive departments shall be ordered
through the Commissioners of Printing, and it shall be
their duty to see that the full number of copies of each
job ordered is received from the printer and delivered
to the proper department. They shall audit all accounts
for printing and binding executed under the provisions
of this chapter, and they shall keep a record of the cost
of printing and binding, the amount of paper used, and
the entire expense of each document or item, and a
copy of each document shall be duly filed and preserved
by them with the cost indorsed upon it.''

Sec. 9029. ''Each contractor for any class of the
public printing shall file and preserve one copy of each
document or other matter by him printed for the State,
which he shall deliver to the Commissioners of Print-
ing, with his account for the same, in which account
shall be specifically stated the various jobs performed,
the number of copies of each job, the number of ems
composition in each, the extra charge, if any, for rule
or figure or rule and figure work, the number of tokens
or quires of press-work in each, designating whether
ordered by the Senate, the House, or jointly by both, or

by other officers or agents of the State, together with the kind and quality of paper used for each job.''

Sec. 9030. ''Each contractor for the folding, stitching, covering and binding shall file and preserve one copy of every document or other matter by him folded, stitched or bound, which he shall deliver, together with his account for the same, to the Commissioners of Printing, which account shall specifically state each item, as provided for in section 9023, and the number of copies of each bill, pamphlet, resolution or document folded, stitched or covered, and the number of copies of laws, journals and documents bound.''

Sec. 9031. ''All accounts filed under the two preceding sections shall be carefully examined by the Commissioners of Printing, and compared with the voucher therefor and the order for the same. If any error be found in such account by said commissioners, they shall correct the same and return it to the contractor who rendered it, and when the account is corrected and adjusted and indorsed by said commissioners, or any two of them, the State Auditor shall draw a warrant upon the treasury for the amount thereof, payable out of any moneys appropriated for that purpose.''

These are substantially the provisions of chapter 145 applicable to the question presented for our consideration. We have thus pointed out the various provisions of the statute both in chapter 119 and 145, which in any way tend to serve the purpose of reaching a correct solution of the propositions now under consideration, and it now remains, after a careful consideration of the various provisions of the statute, as herein indicated, to briefly announce the conclusions reached, as well as the reasons therefor, upon the question now before us.

The insurance business in this, as well as in other States, both as to life and property insurance, has grown to immense proportions, and for the purpose of

protecting the people of this State who sought to deal with insurance companies for insurance, either upon their lives or property, it was deemed advisable to create a separate and distinct department of State government applicable alone to the insurance business; therefore, in 1869 this department of State government was created and it is known in the law as the "Insurance Department;" and every line of legislation relating to this department ever since its creation up to the present time, indicates plainly that the lawmakers intended it as a separate and distinct department of State government, which should be made self-sustaining by the collection of fees, and that the disbursement of funds belonging to such department in payment of expenses, should be under the immediate supervision of the chief officer of such department and only with his approval. After most careful consideration of this subject and the numerous provisions of the statute applicable to it we see no escape from the conclusion that the payment of the claim involved in this proceeding, for printing connected with the Insurance Department, is governed and controlled exclusively by the provisions of chapter 119 of the Revised Statutes of 1899, and that the printing pertaining to the Insurance Department is not embraced nor contemplated in the provisions of chapter 145 of the Revised Statutes of 1899, governing and controlling the Commissioners of Public Printing. It is manifest that the lawmaking power treated them as separate and distinct acts applicable to different subjects. The law creating the Insurance Department was enacted in 1869, and the Board of Commissioners for Public Printing was created in 1870, and with the exception of certain amendments to both acts they have been carried along in the different revisions of '79, '89 and '99, as separate and distinct laws, embracing and covering separate and distinct subjects.

Section 7840 expressly provides that "the Super-

intendent of Insurance shall be furnished with a suitable safe, furniture, stationery, printing, and such other things as may be necessary for the transaction of the business of his office." Then it further provides that all of such expenses shall be paid as provided for by section 7841. This section provides that the expenses as embraced in section 7840 shall be paid monthly out of the amount appropriated by law from the fees collected from the Insurance Department, on warrants drawn upon such funds by the State Auditor on vouchers approved by the superintendent. This section further provides that the superintendent shall immediately, upon the receipt of fees, pay the same into the State Treasury, and that such fees shall be placed to the credit of the Insurance Department fund; and to emphasize the intention of the lawmakers to make the Insurance Department a separate and distinct branch of State government it was expressly provided that the State shall not be responsible in any manner for the payment of any of the expenses of this department, or any charges connected therewith.

As further indicating that so far as the printing of the Insurance Department was concerned the law contemplated that it should be under the supervision of the superintendent, section 7843 provides that "the Superintendent of the Insurance Department shall cause to be prepared, and furnished to every insurance company doing business in this State, printed form of the statements required by him from said companies, and he may make such changes and additions, from time to time, in the same, and in any statements required as shall seem to him best adapted to elicit from said companies a true exhibit of their condition and management." Again, section 7844 provides that the reports of the Superintendent of Insurance shall be published by and subject to the order of the superintendent, at the expense of the department. Section 7849 fully recognizes the right of the superintendent to dis-

burse, in payment of expenses, funds belonging to that department, for it is provided by that section that in his annual report, as required by section 7844, he shall set forth in his statement, verified by oath, the various sums received and disbursed by him, and from and to whom and for what purpose.

The correctness of the conclusion reached that the printing involved in this proceeding is not contemplated by the provisions of chapter 145, relative to printing by the Commissioners of Public Printing, is made manifest by the provisions of section 31 of the General Appropriations act for the years 1905 and 1906.   It will be observed by that section that no part of the State's funds are appropriated to the payment of the expenses of the Insurance Department. While the State may eventually become the beneficiary of the remainder of the funds belonging to such Insurance Department, after the payment of all expenses of such department, yet so long as it remains in the State Treasury, credited to the Insurance Department fund, it is there for the purpose of answering the demands of expenses of the Insurance Department; and it will be further observed by this section that the appropriation for the payment of the expenses of the Insurance Department was specially made chargeable to the Insurance Department fund for the years 1905 and 1906.   It will also be noted that expenses for printing and other things necessary for the transaction of the business of such department, included in this appropriation, are made chargeable to the Insurance Department fund, and the language employed in concluding the provision of section 31 removes all doubts as to the manner in which such funds are to be disbursed connected with the Insurance Department.   It is there provided that "the sums herein appropriated shall be paid out of the fees and earnings of the Department of Insurance and the receipts of the said office. The receipts of the Insurance Department shall be paid into the State Treasury

monthly, not later than the fifth day of each month, and paid out only on the warrant of the State Auditor, which shall be drawn only on the requisition of the Superintendent of Insurance, duly made out and approved by him, stating specifically the purpose for which the money is to be applied.''

We are of the opinion that the provisions of chapter 119, heretofore referred to, creating the Insurance Department, fully indicate that it was the intention of the Legislature to confer upon the chief officer of that department the supervision of all the details connected with it, the right to contract for printing connected with his office and for such other things as may be necessary for the transaction of the business of the Insurance Department, and to pay for the same out of the Insurance Department fund, as indicated in the provisions of the statute. Such has been, ever since the creation of the Insurance Department, up to this time, the practical construction placed upon the law by officers whose duties required them to deal with the subject, and it seems that, if the Superintendent of Insurance has nothing to do with the contracting for the printing in connection with his department, the provisions of the statute as to how he shall pay for such printing are entirely out of place in dealing with the subject by the Legislature.

It is earnestly insisted and very ably argued on the part of learned counsel for respondent that the printing involved in this proceeding connected with the Insurance Department, is governed by the provisions of chapter 145, which provides for the contracting of certain classes of printing by the Commissioners of Public Printing. It is insisted that the Insurance Department should be classed as one of the executive departments of the State and therefore the printing for such Insurance Department falls within the provisions of the third class for the executive departments as provided by section 9012, supra.

Treating the provisions of chapter 145 as a whole, we are unable to give our assent to this insistence. While it is true that the Insurance Department of the State government is dealing with the proper administration and enforcement of the insurance laws, yet we are unwilling to believe that the lawmaking power, when treating of a subject of public printing for the executive departments, had in mind the printing pertaining to the Insurance Department; nor did they regard it as one of the executive departments of the State government within the proper meaning of such terms.

While it is true that under the Constitution of 1865, there was no express provision indicating as to what officers the executive department should consist, it did provide that the supreme executive power should be vested in a Chief Magistrate who should be styled the Governor of the State of Missouri; then followed the provision of the Constitution providing for a Secretary of State, a State Auditor, State Treasurer and Attorney-General, who should be elected.

We are now dealing with the law governing the subject in controversy, which presumably is in harmony with the Constitution of 1875, and when we reach that instrument, section 1, article 5, expressly provides that "the executive department shall consist of a Governor, Lieutenant-Governor, Secretary of State, State Auditor, State Treasurer, Attorney-General and Superintendent of Public Schools, all of whom, except the Lieutenant-Governor, shall reside at the seat of government during their term of office, and keep the public records, books and papers there, and shall perform such duties as may be prescribed by law." Chapter 145 as it appears in the revision of 1899 is a revised bill, and is, therefore, for all purposes, in all respects and in every clause a new law; and it is significant in the revision of that law, the Insurance Department under the Constitution of '75 not being one of the executive departments of State government, that

there should be an absolute failure to indicate any legislative will and intent to embrace the printing pertaining to the Insurance Department within some of the classes of printing designated by section 9012. But aside from this the provision of chapter 145 indicates very clearly that the printing connected with the Insurance Department was never contemplated by any of the provisions of that chapter.

We have heretofore pointed out the provisions of chapter 119 which authorized the disbursement of the funds of the Insurance Department in payment of certain expenses, embracing printing, etc., only upon the requisition and approval of the Superintendent of Insurance. Now, when we come to consider the printing contemplated by chapter 145, we find under the provisions of section 9028, that it is the duty of the commissioners to audit all accounts for printing executed under the provisions of that chapter, and section 9031 substantially provides that the accounts shall be carefully examined by the commissioners of printing, and if any errors be found in such accounts by such commissioners, they shall correct the same and return it to the contractor who rendered it, and when the account is corrected and adjusted and indorsed by said commissioners, or any two of them, the State Auditor shall draw a warrant upon the treasury for the amount thereof payable out of any moneys appropriated for that purpose. These provisions make it manifest, unless they be construed as repealing the provisions of chapter 119 in reference to the payment of printing connected with the Insurance Department, that the printing connected with the Insurance Department is not embraced or in any way contemplated under the provisions of chapter 145.

It is argued that the printing connected with the Insurance Department required both the approval of the Superintendent of Insurance and the Commissioners of Public Printing. We are unable to agree with

counsel for respondent upon that proposition. The provisions of the statute are not susceptible of such construction; in fact, it is apparent that the Legislature has kept the necessary printing pertaining to the Insurance Department separate and distinct from that class of printing required to be done under the direction and supervision of the Commissioners of Public Printing. In the one, the State Auditor draws his warrant at the instance of the Superintendent of Insurance; in the other, at the instance of the Commissioners of Public Printing; and there is no provision of the statute in any way pointing to the requirements insisted upon by respondent, that the printing done for the Insurance Department shall have, in addition to the approval of the Superintendent of Insurance, that of the Commissioners of Public Printing. The provisions of chapter 145 contain no section repealing any of the provisions of chapter 119; nor are any of the provisions of chapter 119 repealed by implication. Repeals by implication are not favored; however, it is not contended by respondent that the provisions of chapter 119 are repealed by the provisions of chapter 145; hence there is no necessity of discussing that subject.

Here we have two statutes applicable to the government and control of separate and distinct classes of subjects, and it is the duty of this court, unless they are irreconcilably in conflict, if it can be done by a reasonable and fair construction, to give both of them force and vitality. The provisions of chapter 119, governing and controlling the Insurance Department, and that of chapter 145 in reference to public printing, are entirely consistent and have been so treated and regarded by the lawmaking power ever since their first appearance in the statutes of this State. This is clearly indicated in the carrying of them without any substantial change into the revision of 1879, '89 and '99.

We are unable to attach the significance to the slight changes in the phraseology of section 5799, Re-

vised Statutes of 1889, by the act of 1897, contended for by the respondent. The act of 1897 changed the location of the office of the Superintendent of the Insurance Department from St. Louis to the City of Jefferson. Under the provisions of the statute of 1889, prior to the change in 1897, when the office was kept in the city of St. Louis, it was provided that the superintendent should procure rooms necessary for his office and provide a suitable safe and furniture therefor, also provide stationery, fuel, printing and such other things as may be necessary for the transaction of the business of his office. The change made by the act of 1897 is that the superintendent shall have his office in the Capitol building and be provided with suitable rooms therein and be furnished with suitable safe, furniture, stationery, printing and such other things as may be necessary for the transaction of the business of his office. There is no material change in the other provisions of the statute as to the disbursements of the funds of the Insurance Department in payment of all the expenses connected with the office. The change in the phraseology in the act of '97 manifestly was simply made to conform to the change of the place of keeping the office, from the city of St. Louis to the city of Jefferson; and it is clear that this slight change in the phraseology was never intended by the Legislature to entirely change the manner of procuring the necessary things for the conduct of the business of the office of the Insurance Department upon its removal to Jefferson City. This is clearly indicated from the fact that there were no changes made in the legislation in any way tending to effect such purpose.

It is finally contended by respondent that the provisions of section 58 of the General Appropriation act of 1905, in which act section 31 heretofore referred to, is included, requires the printing connected with the Insurance Department to be done by the authority and under the directions of the State Printing Commission.

This section provides that all printing provided for in this act shall be done by the authority and under the direction of the State Printing Commission. A careful analysis of that act makes it clear that such is not the purpose or effect of section 58, to which our attention has been directed by respondent. Sec. 1 of that act starts out with the provision that "there is hereby appropriated out of the State Treasury, chargeable to the State Revenue fund, for the contingent expenses and other incidental expenses of the several departments of the State Government for the years 1905-1906, commencing on the first day of January, 1905, and ending on the thirty-first day of December, 1906." Following this section are numerous sections designating the subjects to which the provisions of section 1 should apply. When we reach section 31 the distinction between the public printing under the supervision of the Commissioners and the printing connected with the Insurance Department is clearly kept in view. In that section the appropriation is made out of the funds of the Insurance Department, and it is clear that the legislative mind, in the provisions of that section, were not directed specifically to the subject of printing. They were dealing with all the expenses of the Insurance Department, and the subject of fuel, postage, printing and such other things as may be necessary for the transaction of the business of the department were mere incidents connected with the expenses of that department. The correctness of this conclusion is emphasized by the concluding part of that section, which substantially provides that the expenses of the Insurance Department shall be paid only on the warrant of the State Auditor, which shall be drawn only on the requisition of the Superintendent of Insurance, duly made out and approved by him, stating specifically the purpose for which the money is to be applied. A fair and reasonable construction of section 58 makes it manifest that it was not intended to embrace the printing neces-

sary for the transaction of the business connected with the Insurance Department.

We have thus indicated our views upon the propositions disclosed in the record before us, and we repeat, after a full and fair consideration of all the provisions of the statute applicable to the subject in hand, there is no escape from the conclusion that the provisions of chapter 119, Revised Statutes of 1899, governs and controls the necessary printing in the transactions of the business connected with the Insurance Department, and that such printing is not embraced in, nor is it in any way contemplated by, the provisions of chapter 145, which governs and controls certain classes of public printing for the State. Whether the provisions of law which distinguish the printing necessary for the transactions of the business of the Insurance Department from other classes of public printing is wise or not is not for this court to determine. We have simply undertaken to declare the law as it exists. If public interests demands a change in the statute applicable to this subject, such changes must be sought in another separate and distinct branch of State government.

The demurrer to respondent's return to the alternative writ should be sustained, and it is ordered that the peremptory writ of mandamus as prayed for by the relator, should be awarded.

All concur.